IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Criminal Case No. 13-cr-00076-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDRE J. TWITTY

    Defendants.

## ORDER

Andre J. Twitty, representing himself *pro se* (with appointed stand-by counsel) moves for a "change of venue," in substance a motion asking that I disqualify myself and transfer the case outside the Tenth Circuit. For the reasons set forth herein, the motion [docket entry #46] is denied.

### FACTUAL BACKGROUND

**Indictment.**

On February 14, 2013 the government filed a five-count indictment with the following charges against Mr. Twitty:

Count One. This count alleges that between January 13 and 18, 2011, in the District of Colorado, Mr. Twitty mailed a letter to the United States District Court for the District of Connecticut in Bridgeport, Connecticut with the salutation "P****," a United States Judge. The letter referred to the shooting of United States District Judge John Roll in Tucson, adding, "one less federal D**khead to worry about." It also referred to the murder of "Chief Judge Moody"

by bombing in the 1980's as being "funny as sh*t!!"[1]  The letter indicated that its author possessed firearms and other weapons, including "Ricin," and concluded that "<u>Justice</u> will be <u>mine</u>! Even if I have to <u>DIE</u>!! to get it! . . . You all don't respect the law.  And neither do I.  So lets just <u>wait</u>!!  Time is not a factor!"  Count One accuses Mr. Twitty of violating 18 U.S.C. § 876(c) (threat to injure a United States judge or federal law enforcement official or an official covered by 18 U.S.C. § 1114).

<u>Count Two</u>.  This count charges that between January 17 and 31, 2011, in the District of Colorado, Mr. Twitty sent a letter to the United States Attorney in Atlanta, Georgia (identified in the indictment as "S**** Y****."  The salutation written on the enclosed writings was "E*** H*****," who is described in the indictment as also being an official covered by 18 U.S.C. § 1114.  The indictment charges that the communication contained threats to injure Assistant United States Attorney "D**** M. L***."  There is a reference in the communication to an AUSA found shot to death in Pennsylvania and a comment that what happened to Judge Roll "[s]hould happen [to] a lot more <u>federal bastards</u>."  Mr. Twitty is charged in Count Two of violating 18 U.S.C. § 876(c).

<u>Count Three</u>.  This count charges that between January 18 and 20, 2011, in the District of Colorado, Mr. Twitty mailed a communication to a television reporter/editor at KKTV Channel 11 NEWS in Colorado Springs, Colorado containing threats to injure federal judges, AUSA "D*** M. L***," and unnamed federal employees and their families and others.  The indictment quotes a passage that refers to the killing of Judge Roll.  It refers to "the '<u>motivation</u>' for the <u>next</u> <u>shooting</u> of *<u>lying ass corrupt federal judges</u>," and then mentions "<u>Tenth Circuit Denver</u> <u>Colorado</u>" and <u>Eleventh Circuit – Atlanta GA</u>."  The communication refers to someone having

---

[1] I assume that this is a reference to the murder of Robert Vance, a judge on the United States Court of Appeals for the Eleventh Circuit, on December 16, 1989 when the parcel he opened in his home exploded, killing Judge Vance and injuring his wife.  Walter Leroy Moody Jr. was convicted of the crime.

sat in prison for 13 years in violation of his First Amendment rights, lists a number of weapons, and then adds, "I believe that 'someone' should kill as many of these lying federal m****rf**ers as possible." Mr. Twitty is again charged with a violation of 18 U.S.C. § 876(c).

Count Four. This count charges that between January 28 and 31, 2011 Mr. Twitty sent a communication through the mail addressed to the Clerk of Court for the Tenth Circuit. The salutation written on the enclosed writings is addressed to "Red Neck Clerks, Staff Attorneys, H****, A******* and T********," whom the indictment characterizes as officials covered by 18 U.S.C. § 1114. The indictment charges that the communication contained threats to injure clerks, staff attorneys, judges of the Tenth Circuit Court of Appeals, and others. This count, perhaps more than others, had a racial overtone, suggesting a possible animus against "white" persons. It again mentioned Judge Roll and contained such phrases as, "Did you stop to think about who can follow you all home! or find your address on google.com!" There were more references to weapons, Ricin and explosives. Proclaiming that "[n]othing stops me," the author asked, "Didn't 'Oklahoma City' teach you all anything? The world trade centers?" The indictment charges Mr. Twitty with another violation of 18 U.S.C. § 876(c).

Count Five. The last count charges that between May 9 and 16, 2011, in the District of Colorado, Mr. Twitty mailed a communication to the Clerk of the United States District Court for the District of Colorado. Correspondence within the envelope contained salutations of "Hey Bitches" and "Punk ass Chief Judge." The indictment states that the correspondence contained threats to injure federal employees. It includes such quotes as "upon release (very soon) I will get my justice my way!" And, "[j]ust a matter of time. And Justice will be mine! Then suicide!" The indictment quotes another reference to "Punk ass Chief Judge," followed by, "Do you really think your Bullshit orders signed By your Bullshit clerks are going to stop me! I am

Prepared to <u>DIE</u>!  To get my <u>Justice</u>!  You all will <u>never </u>get away with <u>sh\*t</u>!" This count too is charged as a violation of 18 U.S.C. § 876(c).

### **Case History to Date**

A federal public defender was initially appointed to represent Mr. Twitty.  The case was randomly drawn to Judge Martinez.  A three-day jury trial was set for April 29, 2013.  The defendant, through counsel, filed an unopposed "ends of justice" motion to vacate the trial date, which was granted, and the case was re-set for a three-day jury trial beginning August 26, 2013.

On May 8, 2013 the government filed a Superseding Indictment, substantially similar in content to the original indictment.  On June 3, 2013 Mr. Twitty filed a motion asking that either a new lawyer be appointed or that he be permitted to represent himself, citing counsel's refusal to file requested motions and his overall lack of faith and trust in the assigned public defender.  His public defender then filed a motion asking that the Office of the Federal Public Defender be allowed to withdraw, and that Mr. Twitty be permitted to waive his Sixth Amendment right to counsel and proceed *pro se* [#29].  She acknowledged that she would not file the motions that Mr. Twitty requested, and she represented, among other things, that Mr. Twitty was adamant that he wished to represent himself.  *Id.*

The court issued an order permitting the public defender to withdraw and appointing CJA counsel to represent him.  [#30].  That resulted in the appointment of J. Michael Dowling. Shortly thereafter Mr. Twitty himself began to file motions, which the court struck on grounds that motions must be filed by his attorney.  Mr. Twitty, through counsel, then moved for permission for Mr. Twitty to represent himself, with Mr. Dowling remaining as advisory counsel [#37].  Counsel also filed another "ends of justice" motion to continue the trial.  Both motions

were granted [##40, 42, 43]. On July 29, 2013 the court re-set the trial to begin on November 25, 2013 [#44].

That same day, July 29, 2013, Mr. Twitty filed two substantive *pro se* motions, one to suppress certain expert testimony [#45], and the other to change venue. [#46]. Twelve *pro se* motions are now pending. The Court, for reasons that will become obvious, must address the venue motion first.

Venue/Disqualification

In his motion for a change of venue Mr. Twitty asked that the case be transferred to a circuit other than the Second, Tenth or Eleventh Circuit, and that the presiding judge be a "Non-Tenth Circuit Judge." Mr. Twitty recited in quotes (although acknowledging that it might not be verbatim) comments that he attributed to Judge Martinez: "If this case involved my colleagues in this building, I, of course would have to recuse myself. And order transfer to another district." Concluding from those comments that the judge had not reviewed the indictment, Mr. Twitty pointed out that Counts Four and Five do name the court's colleagues as victims. He argued that 28 U.S.C. § 455(a) and case law required the recusal of Judge Martinez and the transfer that he requested.

In response the government argued that Mr. Twitty had not shown that a change of venue was required. [#52]. Specifically, the government suggested that Mr. Twitty had not shown either (1) that he cannot get a fair trial in the District of Colorado per Fed. R. Civ. P. 21(a) (a court must transfer the proceeding "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there"); or (2) that there is a basis for transferring venue under Rule 21(b) ("for the

5

convenience of the parties, any victim, and the witnesses, and in the interest of justice"). *Id.* at 1-2.

As for the request for a different judge, the government acknowledged that the case "does involve" judges and court staff in this district. *Id.* at 3. The government also called the court's attention to another case in this district, *Twitty v. Zita L. Weinshienk; All Unknown Judges, U.S. District Court, Denver, Co., All Unknown Judges, U.S. Circuit Court 10th Cir. Dec., All Unknown Clerks, Staff Attorney for Both Courts, all [in their] individual capacity,* No. 11-CV-1148-LTB, filed April 29, 2011. The judgment entered in that case was included in Mr. Twitty's mailing to the Clerk of Court that is the subject of Count Five in the present case.

I take judicial notice of the files of this district. Mr. Twitty has filed 47 civil actions in this court during the years 2006 through 2013. Three of those cases -- Nos. 07-CV-1495-ZLW; 09-CV-350-WYD; and 11-CV-1148-LTB – have named judges of this court, the Tenth Circuit, and court staff, as defendants. They all appear to arise out of rulings made in his other civil cases, which in turn arose out of his incarceration in the maximum security prison at Florence, Colorado following a conviction in Georgia. Each of the three cases was dismissed on procedural grounds -- the 2007 case by (now-retired) Judge Weinshienk; the 2009 case by (now Senior) Judge Daniel; and the 2011 case by Senior Judge Babcock. None of those cases involved a threat of physical harm to any defendant.

The government's response [#52] continued as follows:

> The government's position at trial in this case is that the civil proceedings
> pending in the United States District Court for the District of Colorado and the
> unfavorable outcome from the perspective of the defendant are inextricably
> intertwined in the threatening communication that he authored, forming the basis
> of Count Five in the Superseding Indictment. While none of the judges of this
> Court will be called by the prosecution as witnesses, employees from the Clerk's
> Office will to be (sic) witnesses in this case. Orders entered by District Court
> Judges of the United States District Court for the District of Colorado dismissing

>the defendant's civil proceedings will be offered as exhibits by the government at trial.

*Id.* at 4-5.

The government cited 28 U.S.C. § 455(a), providing that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The government reminded the court that "the due process clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases," citing *United States v. Nickl,* 427 F.3d 1286, 1298 (10th Cir. 2005). The response cites cases holding that a claimant must show either actual bias or an appearance of bias; that the judge's actual state of mind is not an issue; and that the standard is purely objective and turns on outward manifestations and reasonable inferences therefrom. *Id.* at 5. The government also noted that Count Four involves rulings of the Tenth Circuit, and that the mailing forming the basis of the count named three specific circuit judges on that court. The government reported that it would be submitting rulings of the Tenth Circuit that went against Mr. Twitty, and it stated its belief that those rulings too were inextricably intertwined in the proof of the charged counts.

Having said all that, however, the government informed the court that it was not confessing the motion to recuse, instead deferring to the court's judgment, nor was it asserting that the request for a transfer to a circuit other than the Tenth, Eleventh or Second Circuits was warranted. *Id.* at 5-6. Mr. Twitty, however, made his position clear. On June 12, 2013 he filed a motion asking Judge Martinez to recuse. [#53]. After the judge granted permission to the government to respond if its previous response to the venue motion did not cover everything it wished to submit, Mr. Twitty filed an appeal to the Tenth Circuit asking that Judge Martinez be ordered to recuse himself. [#55]. Judge Martinez, being thus deprived of jurisdiction while the

7

appeal was pending, vacated the (third) trial date. The appeal was dismissed for lack of jurisdiction. [#68].

On September 20, 2013 Judge Martinez, in a six-page written order, granted Mr. Twitty's motion to recuse. [#74]. His order focused primarily on Count Five of the Superseding Indictment. He noted that, while the treats were not made against him personally, threats against judges and staff within this district are at the heart of Count Five. The order acknowledged that "'threats or attempts to intimidate a judge will not ordinarily satisfy the requirements for disqualification' because these threats are typically motivated by an intent to obtain a recusal." *Id.* at 4 (citing *United States v. Greenspan,* 26 F.3d 1001, 1006 (10th Cir. 1994). However, the court concluded that threats here did not appear to be a ploy to get him to recuse. *Id.*

The court further noted that threats were allegedly made to the Clerk of Court and the Chief Judge, "who are both colleagues and personal acquaintances;" that threats addressed to the Clerk of Court were motivated, at least in part, by rulings of judges in this district; that the government believes those rulings are inextricably intertwined with the threats forming the basis of Count Five; that employees of the Clerk's office will be called as witnesses; and that Judge Martinez has frequent and friendly encounters with employees in the Clerk's office. *Id.* at 4-5. The court cited familiar law to the effect that it is not the reality of bias but the appearance of bias that matters, and that in a close case, the judge must be recused. For all these reasons, he concluded that recusal was appropriate. *Id.* at 6.

The case was then reassigned to Judge Arguello. [#75]. She recused herself in an order issued October 22, 2013, for the reasons set forth in Judge Martinez' order. *Id.* The case was then reassigned to me. [#82]. Mr. Twitty has not yet filed a motion specifically asking that I

recuse. However, it could reasonably be inferred from previous filings that he would want all judges in this district to disqualify themselves.

On November 7, 2013 this Court held a status conference, at the conclusion of which the Court created a tentative new schedule: motions due January 10, 2014; motions hearing February 6, 2014; and a four-day jury trial commencing on February 18, 2014. Those dates are conditioned upon the Court's ruling on the motion to change venue [#46] which is still pending in the electronic system and which I took under advisement. I now turn to that task.

## ANALYSIS AND CONCLUSIONS

Judges Martinez and Arguello concluded that they should disqualify themselves because of the appearance of impropriety. As with Judges Martinez and Arguello, the judges and staff in this district are my colleagues, and I would not want harm to come to any of them. Nevertheless, 28 U.S.C. § 455 is largely self-enforcing on the part of the judge. *See U.S. v. Gigax,* 605 F.2d 507, 511 (10th Cir. 1979). After a good deal of thought, I have come to a somewhat different conclusion than that of my two colleagues.

To begin, like Judge Martinez, I do not believe that I harbor any actual bias or prejudice that would prevent my providing Mr. Twitty with impartial rulings and a fair trial. I have not had prior contact with Mr. Twitty. I have not been named in any of his civil actions; in fact, I was not a judge on this bench when his previous cases naming judges were filed. He has not threatened me personally (nor, so far as the indictment indicates, has he threatened any other judge or staff member in this district by name).

I recognize that whether I am biased is not the only issue. Both 28 U.S.C. § 455(a) and Canon 3.C (1) of the Code of Conduct for United States Judges require that a judge must disqualify himself if his impartiality might reasonably be questioned. "[T]he issue is not whether

9

the judge is impartial in fact, but rather, whether a reasonable man might question his impartiality under all circumstances." *U.S. v. Gigax,* 605 F.2d 507, 511 (10th Cir. 1979).

In evaluating that issue, I consider it to be relevant to consider the position that any federal judge who might preside over this case would be in. The immediate sources of the anger expressed in the subject mailings appear to be rulings from courts in Connecticut, Georgia and Colorado. However, the expressions of anger and the threats go beyond those rulings and appear to extend to federal judges, federal prosecutors, and other federal agents and employees in general. Perhaps more importantly, there seems to be an unspoken but implied assumption that a judge from afar would not have an equal degree of distaste for the threats discussed in the letters because he or she was not the immediate target of them. I doubt that it would make a nickel's worth of difference. A federal judge from, for example, California would likely be as repulsed by a threat to harm a judge or court employee in Colorado as would a judge in Colorado. But some federal judge must preside in this case. I am not convinced that I am in a materially different position than the next judge would be.[2]

In any event, I believe there is a solution that, at least for now, addresses Mr. Twitty' issues. Judge Martinez's recusal order and the government's response focused primarily on Counts Four and Five. Those counts are also the focus of Mr. Twitty's concern, as the following exchange during the November 7, 2013 status conference reflects:

> THE DEFENDANT: … Just one last thing, Your Honor. In order for this indictment to stand in this district, the Government would dismiss count four and five, that's the only thing I could come up with under the law that would remove the alleged victims and leave it open to count one, two, and three.

---

[2] One might also ask whether, if during the course of this case Mr. Twitty threatens whomever presides, that judge would then have to recuse. As mentioned above, courts have generally rejected efforts to disqualify a judge under 28 U.S.C. § 455(a) where the request appears to have been a ploy to obtain a different judge. *Compare, e.g., U.S. v. Dehghani,* 550 F.3d 716, 721-22 (8th Cir. 2008) *with U.S. v. Greenspan,* 26 F.3d 1001, 1006 (10th Cir. 1994). That is not a question that I need to address today.

>THE COURT: So you're saying if the Government did that, you'd be satisfied with leaving the case here.
>
>THE DEFENDANT: That's about the only way legally, I believe.

Transcript, Nov. 7, 2013, at 5-6.

Mr. Twitty's view is not necessarily dispositive. A judge ultimately must decide questions under 28 U.S.C. § 455(a) and the Code of Conduct for himself. However, I do not today need to decide whether my impartiality could reasonably be questioned as to Counts Four and Five. I am satisfied that my impartiality to preside over a trial of Counts One through Three cannot be questioned by Mr. Twitty or by any reasonable man. Accordingly, I will deny the motion for a change of venue, but I will also exercise my discretion under Rule 14(a) of the Federal Rules of Criminal Procedure and order that Counts One through Three will be tried separately from Counts Four and Five.

Therefore, subject to the resolution of any motion that might indicate otherwise, Counts One through Three will be tried to a jury commencing on February 18, 2014. After that trial is concluded, the Court and the parties can reassess what comes next. Because of the pending motions, there should be ample time within speedy trial rules to set a trial on Counts Four and Five, if that is what will be required, after the motions are decided.

DATED this 9th day of December, 2013.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge