IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Criminal Case No. 13-cr-00076-RBJ-1

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ANDRE J. TWITTY,

     Defendant.

---

## ORDER

---

     During the course of a motions hearing on February 6, 2014 there was discussion of the defendant's desire to have the Court issue subpoenas to two potential witnesses. The Court has had the opportunity to reflect on the matter and to conduct its own research on the legal issue posed and now issues this order *sua sponte.*

     By way of background, approximately 15 years ago Andre Twitty was convicted in federal court in Georgia of making threats to public officials. Mr. Twitty was sentenced to 15 years in federal prison and did at least part of his time in federal facilities in Connecticut and Colorado. However, Mr. Twitty has long maintained that he was unjustly convicted, and his continuing frustration has been the subject of litigation in federal courts in Connecticut and Colorado over the years.

     The present case arises from five letters that Mr. Twitty is accused of depositing in a United States mail depository in 2011. The letters were sent to the federal judge in Connecticut who handled litigation filed by Mr. Twitty there; the United States Attorney in the Northern

District of Georgia whose office prosecuted Mr. Twitty; a news reporter in Colorado Springs; the Clerk of the United States Court of Appeals for the Tenth Circuit; and the Clerk of the United States District Court for the District of Colorado. The Superseding Indictment in this case charges that the letters contain threats that violate 18 U.S.C. § 876(c). For reasons explained in an order issued December 9, 2013 [ECF No. 106], I bifurcated counts Four and Five for separate consideration. Trial on counts One through Three is presently scheduled for February 18, 2014.

Also by way of background, Mr. Twitty was originally represented in this case by the federal defender. For various reasons the federal defender withdrew, and CJA counsel was appointed. Mr. Twitty later requested and received leave to represent himself with a CJA appointed attorney serving as his advisory counsel. Attorney Michael Dowling has served in that capacity.

Yesterday's hearing concerned 15 motions filed by Mr. Twitty and one motion filed by the government. One of Mr. Twitty's motions, ECF No. 77, was a motion to issue subpoenas "pursuant to Rule 17(d)" of the Federal Rules of Criminal Procedure to 11 individuals. The substance of the motion invoked Rule 17(b), which provides that upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. Mr. Twitty served a copy of the motion on the Assistant United States Attorney who is prosecuting this case, so the application was not an ex parte application as such.

The individuals as to whom Mr. Twitty requested court-ordered subpoenas were (1) Sally Yates, the United States Attorney for the Northern District of Georgia; (2) Judy Smith, said to be an Assistant United States Attorney in Colorado; (3) J. Owen Forrester, a Senior United States District Judge for the North District of Georgia; (4) Peter Dorsey, formerly a United States

District Judge for the District of Connecticut (deceased); (5) Harris Hartz, Stephen Anderson, and Tim Tymkovich, all judges on the Tenth Circuit Court of Appeals; (6) Eric Holder, the Attorney General of the United States; (7) Daniel Morrison, a Special Agent of the F.B.I. stationed in Washington, D.C.; (8) Steven Lazarus, a Special Agent of the F.B.I. stationed in Washington, D.C.; and (9) the "Chief Judge" of the United States District Court for the District of Colorado.

I addressed the motion briefly during the hearing and, although the motion was not filed ex parte and ex parte consideration was not requested by Mr. Twitty or his advisory counsel during the hearing, I believe on reflection that it might have been better practice for the Court to have suggested that the motion be considered on an ex parte basis.[1]  In any event I found that Mr. Twitty was unable to pay witness fees but that he had not shown that the listed individuals were necessary witnesses.  Accordingly, the motion was denied.

After the Court had concluded its rulings on all pending motions, the advisory counsel (with Mr. Twitty's approval) returned to the subpoena issue.  Again, I think in retrospect that it might have been better practice for the Court to have insisted that the discussion occur outside the presence of the prosecution, but neither the defendant nor advisory counsel requested ex parte consideration.  From the discussion that followed I perhaps understand why.  The defendant has acknowledged that he sent the letters.  His position, instead, is that the letters do not contain "true threats."  Rather, he was exercising his free speech rights to express his frustration and anger over injustice that he believes he has suffered, but he did not intend to injure anyone.  That ties in to the subpoena issue.  The defense contends that the subjective effect of the letters on the recipients of the letters is relevant to whether a "true threat" was made.

---

[1] The Court did take up a CJA-related matter ex parte (meaning that it excused the prosecution from the room before considering the matter) at the request of the advisory counsel.

However, the defendant and counsel were not fully prepared as of yesterday to provide law on the subject.[2]

The Court has now done its own research.  In *United States v. Magleby*, 241 F.3d 1306 (10th Cir. 2001), the court discusses the "true threat" test in the context of 18 U.S.C. § 241.  The court notes, "In determining the existence of a threat in other contexts, this circuit has adopted an objective test, focusing on whether a reasonable person would find that a threat existed."  241 F.3d at 1311 (citing *United States v. Viefhaus*, 168 F.3d 392, 396 (10th Cir. 1999) (discussing the objective standard in regard to a charge of using a telephone to transmit a bomb threat)).  The court added, however, that the Tenth Circuit and the Supreme Court have also indicated that the trier of fact may consider the reaction of the recipients of the alleged threat in determining whether a "true threat" exists.  *Id.* (citing *Watts v. United States*, 394 U.S. 705, 708 (1969) (taking into account "the expressly conditional nature of the statement and the reaction of the listeners" on a charge that the defendant made threats on the President's life)).  The *Magleby* court added that "other circuits that have adopted a 'reasonable recipient test' have also held that evidence of a recipient's response is relevant to whether a true threat exists."  *Id.* (citing *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) (holding that "proof of the effect of the alleged threat upon the addressee is highly relevant" in determining whether a "true threat" had been made on a charge of mailing threatening letters in violation of 18 U.S.C. § 876)).

Advisory counsel focused primarily on the recipients of the letters that give rise to Counts One, Two, and Three.  The "Count One" letter was sent to Judge Dorsey, but unfortunately he has since passed away.  The "Count Two" letter was sent to Sally Yates, the present United States Attorney for the Northern District of Georgia.  There has been no indication that she was

---

[2] Advisory counsel did present a quote from a Second Circuit case, yet did not provide a Tenth Circuit opinion to which this Court is bound.

involved personally in the prosecution of the case involving Mr. Twitty.  The letter does identify and allegedly threaten harm to an Assistant United States Attorney, David M. Leta, who was involved in the prosecution.[3]  The "Count Three" letter was sent to Shannon Brinias, then a reporter with Channel 11 News in Colorado Springs.  The letter does not appear to contain any alleged threat directed at Ms. Brinias personally.

The fact that Ms. Yates and Ms. Brinias were the addressees of Mr. Twitty's letters does not, by itself, convince me that they necessarily have relevant evidence to provide.  It appears that they were sent the letters because of their positions at the time, not because they were personally involved in the matters that have upset Mr. Twitty.  It also did not appear to me that Mr. Twitty or his advisory counsel had much if any knowledge as to what these individuals would say about the effect of the letters on them if they did appear, or whether their testimony would be helpful or harmful to the defendant's position.  In fact, it is not even clear that all of these individuals have personal knowledge of the contents of the letters.  I suggested that advisory counsel confer with the prosecuting attorney to see whether they might be able to reach a stipulation concerning whether these individuals have actually seen the letters, and I deferred further discussion of the matter to the trial preparation conference scheduled for February 13, 2014.

Again, however, the opportunity to reflect overnight has spurred me to suggest another option.  If the defendant and his advisory counsel would prefer to make their case about the relevance of the testimony of these individuals or others on an ex parte basis, they should notify Chambers, and I will hear their presentation on that basis.  However, if they continue to be content to discuss their position in open court, that's their call.  Either way, they should be prepared to show why the presence of the individuals is necessary for an adequate defense.

[3] The AUSA informed the Court and the defendant that Mr. Leta will be present at trial.

It is unfortunate that this is occurring shortly before the scheduled trial.  If the Court were convinced that these individuals were truly necessary for an adequate defense and subpoenas were issued, there would then be logistical issues due to the late hour.  The AUSA mentioned, for example, the Department of Justice's "Touhy" regulations concerning responses to subpoenas served on DOJ officials.  *See* 28 C.F.R. §§ 16.21–16.26.  He also reported that Ms. Brinias has relocated to California.  In any event, we will deal with the logistical issues if and when we must.

DATED this 7th day of February, 2014.

BY THE COURT:

R. Brooke Jackson
United States District Judge