IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 13-CR-00076-RBJ
Civil Case No. 17-CV-02472-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDRE J. TWITTY,

    Defendant.

# ORDER DENYING HABEAS PETITION

Andre J. Twitty petitions to set aside his conviction pursuant to 28 U.S.C. § 2255. ECF No. 397. He also, as he has before, moves for immediate release from custody. ECF No. 429. The petition and the motion, both filed in Case No. 13-cr-00076-RBJ, are denied.[1]

## BACKGROUND – CASE HISTORY

This case began on February 14, 2013 when the government filed a five-count indictment charging the mailing of five letters threatening various federal officials with harm in violation of 18 U.S.C. § 876(c). ECF No. 1. The indictment was replaced by a superseding indictment. ECF No. 24. Two of the counts were later bifurcated for separate trial and ultimately were dismissed. The remaining counts were tried to a jury February 18-21, 2014, resulting in convictions on two counts and an acquittal on one count. ECF No. 157-5 (Jury Verdict, juror names redacted). I

---

[1] Mr. Twitty filed two related cases: No. 14-cv-0651-RBJ, that was dismissed without prejudice, and No. 17-cv-2472-RBJ, a case in which the only docket entry is a letter from Mr. Twitty to the Court.

sentenced Mr. Twitty to 60 months imprisonment on Count One and 108 months imprisonment on Count Two, the terms to run concurrently. *See* ECF No. 185 (Judgment).

The conviction was affirmed by the Tenth Circuit on direct appeal. *U.S. v. Twitty*, 591 F. App'x 676 (10th Cir. 2015) (unpublished) (*Twitty I)*. Mr. Twitty then successfully petitioned the United States Supreme Court for a writ of certiorari. *Twitty v. United States*, 136 S. Ct. 90 (2015). The Court vacated the judgment and remanded the case to the Tenth Circuit for further consideration in light of *Elonis v. United States*, 135 S. Ct. 2001 (2015), a decision that came down after the Tenth Circuit's affirmance of the conviction. The Tenth Circuit subsequently reversed Mr. Twitty's conviction and remanded the case to this Court for further proceedings. *United States v. Twitty*, 641 F. App'x 801 (10th Cir. Feb. 1, 2016) (unpublished) (*Twitty II)*.

The issue resulting in the reversal of the conviction was the *mens rea* requirement for conviction under 18 U.S.C. § 876(c). I had instructed the jury that a true threat was a serious threat as distinguished from mere political argument, idle talk, or jest. A true threat was a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act. I told that jury that it could consider the reaction of those to whom it was made and the context in which the statements were made. I instructed that it was not necessary that the government show that the defendant intended to carry out the threat, nor that the defendant had the apparent ability to carry out the threat. Significantly, my instruction stated, "*The question is whether those who hear or read the threat reasonably consider that an actual threat has been made.* It is the making of the threat and not the intention to carry out the threat that violates the law." ECF No 157-4, Instructions 9 and 10 (emphasis added).

In *Elonis*, which concerned a prohibition on making threats found in a statute similar to the one at issue in the present case, 18 U.S.C. § 875(c), the Court found that an instruction that the government need only prove that a reasonable person would regard the communications as threats was error. Rather, the mental state of the defendant, that is, an intent to issue a threat (or what he knows will be interpreted by the recipient as a threat) is a critical element. *See id.* at 2008-12. The Court stated, "There is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 2012.

On remand the Tenth Circuit held that a mental state element similar to that applied to 18 U.S.C. § 875(c) in *Elonis* must also be alleged and proved in cases charging a violation of 18 U.S.C. § 876(c). 641 F. App'x at 802. n.1. The court cited *Elonis'* holding that the mental state requirement "was satisfied where 'the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.'" *Id.* Throughout the remainder of the order, however, the court expressed this mental state requirement in terms of Mr. Twitty's "subjective intent" to issue a threat. *Id.* at 802-04/

In addition to his successful challenge to the jury instruction, Mr. Twitty also challenged the sufficiency of the indictment which had omitted the mental state requirement. The court held that he had forfeited that challenge by failing to raise it in his opening brief on appeal. *Id.* at 808. However, the court noted that "should the government elect to retry Mr. Twitty on the § 876(c) counts, it will need to amend the indictment to include the subjective-intent element." *Id.*

The government then obtained and filed a Second Superseding Indictment. ECF No. 271. In each of the two counts, after quoting language from letters written and mailed by Mr. Twitty that the government contends constitute unlawful threats, the government added the following:

3

"The defendant transmitted this communication for the purpose of issuing a threat, and with knowledge that the communication would be viewed as a threat." *Id.* 2, 4. Thus, the government essentially borrowed the language from *Elonis* that the Court and the Tenth Circuit both held would satisfy the mental state requirement, changing the disjunctive "or" in the appellate opinions to the conjunctive "and" in the indictment.

Mr. Twitty then moved to dismiss the indictment based on "grand jury misconduct," noting that the Tenth Circuit emphasized that an amended indictment must include the subjective intent element, and arguing that the Second Superseding Indictment does not include that element. ECF No. 281. He added in a separate motion that the Court should dismiss the Second Superseding Indictment because a second prosecution would constitute unconstitutional double jeopardy. ECF No. 282. In yet another motion he argued (as he had argued in the trial) that the statements in the letters constituted his exercise of his free speech rights, and that the government could not prove that he had the subjective intent to threaten anyone. ECF No. 285. In a written order issued April 12, 2016 I denied his motions. ECF No. 294.

The two counts were tried for the second time May 16-18, 2016. I instructed the jury concerning the meaning of a true threat as directed by the Supreme Court in *Elonis* and the Tenth Circuit in *Twitty II*. *See* ECF No. 342 at 15 (Instruction No. 11). He was convicted. ECF No. 345 (Jury Verdict, juror names redacted). On August 4, 2016 I sentenced Mr. Twitty to 60 months imprisonment on Count One and 78 months imprisonment on Count Two, the terms to run concurrently; judgment entered on August 8, 2016. *See* ECF No. 368 (Judgment). On direct appeal the Tenth Circuit affirmed his conviction. *U.S. v. Twitty*, 689 F. App'x 890 (10th Cir. May 9, 2017) (unpublished) (*Twitty III).* His petition for a writ of certiorari was denied. *Twitty v. United States,* 138 S. Ct. 195 (Mem), Oct. 2, 2017.

**BACKGROUND -- COUNSEL**

Because the pending petition raises, in part, a claim of ineffective assistance of counsel, I will provide some additional background specifically focusing on attorney representation. During the entire history of this case Mr. Twitty has been an inmate at the United States Penitentiary, Administrative Maximum Facility (ADX), in Florence, Colorado, initially as the result of previous conviction, later serving sentences imposed by this Court. He represented himself pro se at the March 8, 2013 initial appearance after the case was first filed on February 14, 2013.

On March 11, 2013 an Assistant Federal Public Defender entered an appearance on Mr. Twitty's behalf. ECF No. 6. On June 4, 2013 the Office of the Federal Public Defender moved to withdraw. The assigned lawyer indicated that because she was unwilling to file motions that Mr. Twitty wanted her to file, or otherwise "do his bidding" as she put it, he was insisting on representing himself. *See* ECF No. 29 at 2-5. The Court granted the motion but ordered that a lawyer from the CJA panel be appointed to represent him. ECF No. 30. Attorney J. Michael Dowling was appointed. ECF No. 31.

Mr. Twitty continued to file motions on his own behalf, which the Court disallowed in view of his representation by counsel. Mr. Twitty then moved for permission to proceed pro se with advisory counsel only. ECF No. 37. That motion was ultimately granted. ECF No. 43. Mr. Twitty continued to represent himself, with Mr. Dowling serving as advisory counsel, though all pretrial proceedings and his first trial. During the trial I observed Mr. Dowling consulting with Mr. Twitty from time to time, but Mr. Twitty did all the talking and appeared to me always to be having it "his way." He continued to represent himself on appeal, and in his successful petition for a writ of certiorari.

After the case returned to this Court on the Tenth Circuit's remand I again appointed a lawyer from the CJA panel to serve as advisory counsel. This time the lawyer assigned by the panel was R. Scott Reisch. Mr. Twitty began the second trial representing himself, but it was apparent to me that he was receiving and considering Mr. Reisch's advice as the jury selection process went forward. During a bench conference near the end of jury selection Mr. Twitty informed the Court that he had changed his mind and now wanted Mr. Reisch to represent him fully, not just as advisory counsel. *See* ECF No. 379 at 83 (transcript p. 97). I noted that I had known Mr. Reisch a long time, and that he is a good defense attorney. Mr. Twitty agreed, commenting that he had already determined that Mr. Reisch was better than his advisory counsel from the first trial. *Id.* at 83-84 (transcript p. 97-98). Mr. Reisch agreed to accept the change of his role, and I appointed him as Mr. Twitty's attorney. His representation continued from the opening statement to the end of the trial.

Following the trial Mr. Twitty filed a motion for judgment of acquittal. ECF No. 346. I denied the motion, noting that he was still represented by counsel, ECF No. 351. Mr. Twitty then terminated Mr. Reisch's services but requested that he serve again as advisory counsel. *See* ECF No. 357. I declined that request, noting, among other things, that I was not willing to modify Mr. Reisch's role solely so that Mr. Twitty could file his own motions. I reminded him that that was what he had done before the first trial, and expressed my opinion that the result (his filing his own motions) had not been beneficial to him. I indicated that Mr. Twitty could represent himself if he wished to but also noted that I would benefit from Mr. Reisch's experience and ability in the determination of any motions. ECF No. 360.

Mr. Twitty did not persist in his desire to represent himself, and Mr. Reisch continued as Mr. Twitty's attorney through sentencing and the filing of a notice of appeal. The Tenth Circuit

then granted Mr. Reisch's motion to withdraw and appointed substitute CJA counsel, Robert Berger, to represent Mr. Twitty on appeal. ECF No. 377. Mr. Berger entered his appearance on September 6, 2016. ECF No. 384.

While the appeal was pending Mr. Twitty continued to try to file motions and to submit letters to both this Court and the Tenth Circuit. *See* ECF Nos. 390 and 395 at 10. Nevertheless, Mr. Berger represented Mr. Twitty through the issuance of the Tenth Circuit's mandate. Mr. Twitty apparently filed the petition for a writ of certiorari himself, which as I have noted was denied.

## HABEAS PETITION

On October 10, 2017 Mr. Twitty, representing himself pro se, filed the pending petition pursuant to 28 U.S.C. § 2255. ECF No. 397. He asserts that (1) his counsel was ineffective, *id.* at 14-15; (2) the evidence of his subjective intent was insufficient, *id.* at 16-23; (2) his First Amendment rights were violated because he did not intend to communicate a true threat, *id.* at 24-25; and (4) prosecutorial misconduct, *id.* at 26-27. He has not requested the appointment of counsel, advisory or otherwise, for representation on this habeas petition. The Court may appoint counsel. 28 U.S.C. § 2255(g). Considering Mr. Twitty's continual insistence on representing himself, and his history of filing motions himself notwithstanding that lawyers have been appointed to represent him, I decline to appoint yet another lawyer to represent him. I also find that he has implicitly waived his right to be represented by counsel.

## STANDARD OF REVIEW

A district court may dismiss a § 2255 motion without holding a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

7

I must construe the habeas application liberally because Mr. Peres is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

"'Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to §2255.'" *Warren v. United States,* 706 F. App'x 509, 511 (10th Cir. Aug. 24, 2017) (unpublished) (quoting *United States v. Prichard,* 875 F.2d 789, 791 (10th Cir. 1989)). "'When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered.'" *Id.* (quoting *United States v. Cox,* 83 F.3d 336, 341 (10th Cir. 1996)).

"To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defense was prejudiced by that deficient performance." *Smith v. Duckworth,* 824 F.3d 1233, 1249 (10th Cir. 2016) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)) (emphasis added). "An insufficient showing on either element is fatal to an ineffective-assistance claim, rendering consideration of the other element unnecessary." *Id.* Deficient performance means that that counsel's representation was objectively unreasonable, i.e., that "'it amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.'" *Id.* (quoting *Harrington v. Richter,* 562 U.S. 86, 105 (2011)). Prejudice requires the defendant to "show that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different. *Id.*

## ANALYSIS AND CONCLUSIONS[2]

Because Mr. Twitty's arguments concerning ineffective assistance of counsel boil down to the argument that appellate counsel did not raise the other arguments on direct appeal, I will address the other claims first.

### A. <u>Sufficiency of the Evidence of Subjective Intent</u>.

To begin, I find that this argument is procedurally deficient because it could have been raised on his direct appeal from his second conviction. That would not be a bar if Mr. Twitty established cause for the failure and resulting prejudice, or a fundamental miscarriage of justice. *See Warren,* 706 F. App'x at 511. But no cause, prejudice or injustice results from counsel's failure to raise on direct appeal an argument that, as I discuss next, lacks merit as a matter of law.

Mr. Twitty argues that there was insufficient evidence of his subject intent. However, in *Twitty II,* remanding the case to this Court for further proceedings, the Circuit stated,

> To make a finding of sufficiency of the evidence, all that is required is for the court to make a legal determination whether the evidence was strong enough to reach a jury at all. On the evidence presented here, a properly instructed jury could have concluded (but was not required to conclude) beyond a reasonable doubt that Mr. Twitty subjectively intended his communications as a threat, or with knowledge that they would be viewed as a threat. **The extreme and violent language contained in the letters, their reference to specific and detailed violent acts, and the fact that they were sent to specific, identified recipients, would permit a reasonable jury to find the necessary evidence to satisfy both the "true threat" and mens rea requirements.** Thus, even if the sufficiency of the evidence is measured by the "new" standard under *Elonis,* Mr. Twitty may be retried.

641 F. App'x at 807 (bold emphasis added).

---

[2] For the reasons set forth in this order, I find that the motion and the files and records of the case conclusively show that Mr. Twitty is entitled to no relief. Therefore, I decline to set a hearing on his petition. *See* 28 U.S.C. § 2255(b).

9

The same letters were, of course, introduced at the second trial. The problem at the first trial was not insufficient evidence but an insufficient instruction. That problem was corrected in Instruction 11 at the second trial. Because that instruction is pertinent to both this argument and Mr. Twitty's second argument in the pending petition, I will quote it here in its entirety:

> INSTRUCTION NO. 11
> **True Threats and Free Speech**
>
> The defendant, Andre J. Twitty, denies that his two letters constituted threats contrary to the law. He contends that he was exercising his right of free speech guaranteed by the First Amendment to the United States Constitution.
>
> The First Amendment does not protect speech that constitutes a "true threat." A true threat occurs where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to another individual. **Put another way, it is a true threat only if the defendant's subjective intent was that his communication would be viewed as an actual threat. The government must prove beyond a reasonable doubt that Mr. Twitty's purpose was to communicate a true threat.**
>
> Communications that would not constitute an unlawful threat would include, for example, political argument, idle talk, jest and mere advocacy of the use of force or violence. Similarly, the fact that language is crude, offensive, profane, vituperative, or abusive does not remove it from constitutional protection.
>
> But if you find that Mr. Twitty knew the threatening nature of his communications and specifically intended that the recipients of his communications would feel threatened with bodily injury, then the First Amendment protection does not apply. Please note, the government does not have to prove that the defendant actually intended to carry out the threat, nor is it necessary that the government prove that the defendant had the apparent ability to carry out the threat. It is the intent that a statement will instill fear of bodily injury in the recipient and not the intent or the ability to carry out the threat that violates the law.

ECF No. 342 at 15 (emphasis added).

Mr. Twitty, after full advisement as to his rights and consultation with his counsel, elected not to testify. *See* Transcript, ECF No. 380, at 95-98, 147-52 (transcript pp. 279-82, 331-36). The jury therefore had no direct evidence of his subjective intent, but it was entitled to draw

reasonable inferences from his writings. I find, as the Tenth Circuit essentially found in *Twitty II,* that the letters alone were sufficient to support a jury finding that Mr. Twitty had the subjective intent verdict of subjective intent.

### B. First Amendment Rights.

Mr. Twitty argues that his free speech rights under the First Amendment were violated because he did not intend to communicate a true threat. That is, in substance, the same as his first argument. His letters could have been (and were) interpreted by the jury as evidencing his subjective intent to communicate a true threat, as defined in Instruction 11. That instruction specifically explained what is and is not a violation of a defendant's First Amendment rights in the context of an alleged true threat. I conclude as a matter of law that Mr. Twitty's First Amendment rights were not violated, because the jury was properly instructed on this issue. I also conclude, for the same reasons expressed above concerning Mr. Twitty's first argument, that it is procedurally deficient.

### C. Prosecutorial Misconduct.

Mr. Twitty's argument here is not entirely clear. He begins with another argument not raised on direct appeal -- that it is unprofessional to recommend an indictment on less than probable cause. ECF No. 397 at 26. I agree, but there was probable cause in this instance. Again, Mr. Twitty's letters speak for themselves.

He states, "it is clear that the prosecutors' misstatements of fact and law substantially influenced the Grand Jury's decision to indict Petitioner for a crime they knew did not exist." *Id.* (case citations omitted). However, he does not indicate what the misstatements were or provide any basis for the conclusory assertion that the prosecuting attorneys knew that the crime did not

exist. On the contrary, the jury found that a crime – actually two crimes – did exist and was committed by Mr. Twitty.

I addressed Mr. Twitty's arguments concerning the Second Superseding Indictment in the pretrial order I issued on April 12, 2016. That order speaks for itself. ECF No. 294.

**D. Ineffective Assistance of Counsel.**

Mr. Twitty cites a great deal of law concerning the responsibilities of counsel. *See generally* ECF No. 397 at 14-15. His focus appears to be on the representation he received on his direct appeal. However, he does not clearly express what he believes his appellate counsel did wrong. I infer that Mr. Twitty believes that counsel's failure to raise the three arguments I have already addressed constitutes ineffective assistance. But one cannot fault a lawyer for not raising arguments that plainly lack merit.

He emphasizes that he has always maintained that his letters do not contain "the required element of threat to injure." *Id.* at 15. I agree that he has consistently maintained that position. He has argued (but not presented evidence) that he did not intend to threaten anyone. Unfortunately for him, however, his letters have been interpreted otherwise, and I cannot agree that the jury's interpretation was unreasonable. Mr. Twitty implores the Court to conduct a de novo review of the record which, he submits, "will clearly reveal, there is '<u>no evidence</u>' to support the required elements of (1) 'threat to injure' and (2) 'for the purpose of issuing a threat.'" He is wrong. This Court and the Tenth Circuit have both recognized the significance of the letters in that regard.

Mr. Twitty has always been a perfect gentleman in my court. He is an intelligent and charismatic individual. Based on my contact with him during the case I frankly doubt that he intended to carry out the threats so vividly expressed in his letters. But as Instruction 11

expressed, that is not the point. My sense is that Mr. Twitty is a man who has a great deal of pent up anger, perhaps justifiably so, but he expressed his anger in an unlawful manner. Therefore, he must serve his time. I truly hope that once he is released he will never have to go back into custody, and that he will find a way to live out his life at peace with the world. I also hope that his mother, who is battling cancer, is winning that battle.

The bottom line is that Mr. Twitty has not satisfied either prong of the *Strickland* test. He has not shown that appellate counsel's representation was in any sense objectively unreasonable or incompetent. Nor has he shown that there is a reasonable probability that if counsel had raised in the direct appeal the substantive arguments Mr. Twitty now advocates the result of the direct appeal would have been different. Finally, I note that he has not criticized Mr. Reisch's performance as his trial counsel. I find and conclude that he has not established ineffectiveness of counsel.

**ORDER**

1. The habeas petition, specifically plaintiff's motion to vacate, set aside, or correct sentence, ECF No. 397, is DENIED.

2. Plaintiff's pending motion for immediate release, ECF No. 429, is DENIED for same reasons discussed concerning the habeas petition.

DATED this 4th day of January, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge